**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

DR. HABIBA CHIRCHIR,
on behalf of herself and a similarly
situated class of persons,

                Plaintiff,

v.                                         CIVIL ACTION NO.   3:20-0416

CITIZENS BANK, N.A.
d/b/a Citizens One Home Loans,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Citizens Bank, N.A.'s ("Citizens") Motion to Dismiss Plaintiff Dr. Habiba Chirchir's First Amended Class Action Complaint (ECF No. 19) and its Supplemental Motion to Dismiss Plaintiff's First Amended Complaint under Fed. R. Civ. P. 12(b)(1). ECF No. 48. Plaintiff opposes the motions. For the following reason, the Court **GRANTS, in part,** and **DENIES, in part,** Citizens original motion and **DENIES** its supplemental motion to dismiss.

**I.
RELEVANT
FACTUAL ALLEGATIONS**

The parties agree on much of the factual background. In 2016, Plaintiff took out a home mortgage loan and entered into a Deed of Trust with United Bank, Inc. As part of the loan agreement, Plaintiff was required to pay $50.51 per month for private mortgage insurance ("PMI"). United Bank contracted with Genworth Mortgage Insurance Corporation/Genworth Mortgage

Insurance Corporation of North Carolina (collectively "Genworth") to provide the PMI on the loan.

Approximately two weeks after the loan's origination, United Bank transferred Plaintiff's loan to Franklin American Mortgage Company (Franklin American), which then transferred the loan about two weeks after that to Fannie Mae. Although Franklin American initially retained the servicing rights on the loan, it transferred those rights to Citizens on May 1, 2019. According to the First Amended Class Action Complaint, Plaintiff states she made both her May and June loan payments on the same day the serving rights were transferred to Citizens. On June 12, 2019, Citizens processed PMI disbursements from those payments to Genworth for April and May. Thereafter, on June 18, 2019, Plaintiff paid off the balance of her loan in full. The following day, Citizens disbursed a PMI payment to Genworth in the amount of $50.51, which it asserts was associated with the June payment. Thereafter, on July 1, 2019, Citizens refunded to Plaintiff $1,080.52 as the balance in her escrow account.

In her First Amended Class Action Complaint, Plaintiff indicates all her PMI payments between June 2018 and April 2019 were made between the fifth or eighth of each month. Nonetheless, when Plaintiff paid off her loan, Citizens made the PMI payment the very next day. The crux of Plaintiff's allegations against Citizens is that it should not have made the $50.51 disbursement on June 19. Instead, Plaintiff maintains Citizens was required to pay her $1,131.03, which was the full escrow balance as of June 18.[1]  Plaintiff asserts Genworth only was entitled to

---

[1]In her First Amended Class Action Complaint, Plaintiff asserts the full escrow amount due her was $1,121.03 and $1,131.03. *Compare First Am. Class Action Compl.* at ¶¶32, 41 *with* ¶76. It appears that the $1,121.03 figure is an inadvertent error as Plaintiff was paid $1,080.52 and

the prorated PMI amount of $30.31 for the eighteen days in June the loan was active, leaving a $20.20 overpayment. By deducting $50.51 from the escrow account, Plaintiff alleges violations by Citizens of the Real Estate Settlement Procedure Act ("RESPA") (Count II), Breach of Contract (Count III), and violations of the West Virginia Consumer Credit Protection Act's ("WVCCPA's") protections against fraudulent, deceptive, or misleading representations as to consumer credit protection (Count V) and the WVCCPA's regulations against unfair or deceptive acts or practices (Count VI). In her action, Plaintiff also brought claims against Genworth under the Homeowners Protection Act ("HPA") (Count 1), the WVCCPA's restrictions guarding against abusive acts or practices as to finance charges and related provisions (Count IV) and the WVCCPA's regulations against unfair or deceptive acts or practices (Count VI).

Plaintiff and Genworth settled their dispute, and on July 16, 2021, they entered into a Stipulation of Dismissal and filed it with the Court. *Stip. of Dis. with Prej. as to Genworth Defs. Only*, ECF No. 47. The Stipulation provides that Plaintiff is dismissing her claims only as to Genworth. The Stipulation does not provide any details whatsoever about the settlement, and it expressly provides that the claims against Citizens remain.

## II.
## DISCUSSION

### A.
### Standing

In its Supplemental Motion to Dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure, Citizens argues that the settlement with Genworth has caused Plaintiff to lose standing both in her personal capacity and as a class representative. In support of its argument,

---

the PMI payment was $50.51.

Citizens cites the recent Supreme Court decision in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021). In *TransUnion*, the Supreme Court emphasized the necessity of a plaintiff to have suffered a "concrete harm" in order to have Article III standing to maintain an action in federal court. 141 S. Ct. at 2200. In other words, a plaintiff must have a "personal stake" in the outcome. *Id*. at 2203 (internal quotation marks and citations omitted). To establish a personal stake, a plaintiff must demonstrate: "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* (citation omitted). It is not enough for standing purposes that the plaintiff suffered an injury at law. The plaintiff must be "*concretely harmed* by a defendant's statutory violation." *Id*. at 2205 (italics original). Although "Article III grants federal courts the power to redress harms that defendants cause plaintiffs, [it does not give federal courts] freewheeling power to hold defendants accountable for legal infractions." *Id*. (internal quotation marks and citations omitted). Additionally, it is a plaintiff's burden to demonstrate standing exists, and the plaintiff "must maintain their personal interest in the dispute at all stages of litigation." *Id*. at 2208 (citation omitted). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed.R.Civ.P. 12(h)(3). Moreover, a lack of subject-matter jurisdiction may be raised at any time by a party or the court. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).

In this case, Citizens does not deny that Plaintiff had standing when she filed the action. However, it argues that, when she settled with Genworth, she lost standing because she no longer has a "concrete, particularized injury" that the Court can redress. In other words, the satisfaction of the overpayment extinguished her concrete harm and Article III standing.

To the contrary, Plaintiff maintains that Citizens' argument is essentially an improper and premature offensive invocation of the "one satisfaction rule" defense. Plaintiff argues Citizens' argument rests on the faulty assumption that her settlement with Genworth covered, in full or in part, her claim against Citizens. Plaintiff points out however that, other than Count VI,[2] her claims against Genworth and Citizens are distinct, and she insists there is nothing to support a finding the Genworth settlement included compensation for the PMI overpayment or any other costs, fees, actual damages, and statutory damages she is entitled to collect against Citizens. Moreover, there is no allegation by Citizens that Genworth admitted to liability as part of the settlement. Therefore, Plaintiff claims her settlement with Genworth has no bearing on her standing to fully recover from Citizens.

In support, Plaintiff cites *Trunzo v. Citi Mortgage*, Civ. Act. No. 2:11-cv-01124, 2018 WL 741422 (W.D. Pa. Feb. 7, 2018). In *Trunzo*, the plaintiffs settled their claims against two defendants, leaving only a claim under the Fair Debt Collections Practices Act ("FDCPA") against a third defendant, Phelan Hallinan & Schmieg ("PHS"). 2018 WL 741422, at *1-2. PHS then moved to dismiss the action against it under Rule 12(b)(6) for Article III mootness, arguing the named plaintiff's settlement against one of the defendants included a claim under the FDCPA and the settlement exceeded the statutory maximum recovery allowed under the Act. *Id*. at *2, 4. Thus, PHS insisted the plaintiff could not collect any further damages from it under the FDCPA.

In disagreeing with PHS, the district court found that, in addition to the FDCPA, the settlement included two other claims. Thus, it was impossible for the court to allocate amongst

---

[2]Count VI is for unfair or deceptive acts or practices under the WVCCPA.

the claims and find that the FDCPA claim was satisfied in full. Additionally, the court could not

assume that the settlement "constitutes an admission of liability or an offer of judgment under the

FDCPA." *Id*. at *5. In rejecting PHS's mootness argument, the district court reasoned:

> "Determining after the fact how parties to a general settlement valued various claims in arriving at their settlement is inherently difficult. Consequently, such valuations would be unlikely to represent precisely what factors each party weighed and how it valued them in reaching the settlement. To add to the uncertainty, the settling defendants would ordinarily have no interest in how the proceeds were allocated among the various claims. On the other hand, the plaintiff would have a real interest in aggrandizing by hindsight the amounts attributable to the claims now known to have been decided in favor of the defendant."

*Id*. at *6 (quoting *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp*., 995 F.2d 425, 436

(3d Cir. 1993)). The district court determined the settlement proceeds should not be allocated to

set off one hundred percent of the FDCPA claim unless the record is "demonstratively clear" that

is what should happen. As it was not clear, the district court concluded the settlement cannot be

said to fully satisfy the FDCPA claim against PHS. *Id*.


       Upon consideration, the Court finds the logic of *Trunzo* persuasive. In this case, the

only thing the Court knows is that Genworth settled its claims with Plaintiff. The Court does not

know the amount of the settlement, how the settlement should be allocated amongst the claims, or

if the settlement compensated Plaintiff for actual damages. Moreover, the fact that there was a

settlement is not an admission of liability. Therefore, the Court concludes that the Genworth

settlement proceeds cannot be considered to be a full satisfaction of the claims against Citizens, a

live case and controversy for purposes of Article III standing still exists, and Plaintiff has standing

to proceed as the putative class representative.[3] Accordingly, the Court **DENIES** Citizens'

Supplemental Motion to Dismiss Plaintiff's First Amended Class Action Complaint under

Fed. R. Civ. P. 12(b)(1).[4]

## B.
### Rule 12(b)(6)

Turning next to the original motion, Citizens moves to dismiss pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure. It is well established that in evaluating a motion

pursuant to Rule 12(b)(6), the Court must look for "plausibility" in the complaint. *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544 (2007). This standard requires a plaintiff to set forth the "grounds"

for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." *Id.* at 555 (internal quotation marks and

citations omitted). Accepting the factual allegations in the complaint as true (even when doubtful),

the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id.*

---

[3]Citizens argues in its Reply that "Plaintiff does not dispute (and, thus, appears to implicitly concede[s]) that she received the $20.20 she claimed both Genworth and Citizens owed her in the form of 'unearned premiums' on her mortgage insurance." *Citizens' Reply*, at 3, ECF No. 51. However, the Court finds no such concession on the part of Plaintiff. In fact, Plaintiff states in her Response that Citizens has failed to show that the Genworth settlement "constituted compensation of all damages that could possibly arise from all of Citizens' potential legal violations and damages exposure, including statutory damages under RESPA and the WVCCPA and *actual damages in the amount of $20.20 suffered by Plaintiff*, or damages for breach of contract." *Pl.'s Resp.*, at 8 (italics added).

[4]The Court rejects Citizens' reliance on *Dobson v. Hartford Life & Accident Insurance Company*, 518 F. Supp.2d 365 (D. Conn. 2007), and *Fair Housing Council of Oregon v. Brookside Village Owners Association*, No. 3:08-cv-3127-ST, 2012 WL 8017842 (D. Or. Oct. 19, 2012). As noted by Plaintiff, *Dobson* is distinguishable and irrelevant to this case because there was only one defendant that stipulated to liability, agreed to disgorge profits, and entered into an agreement giving the plaintiff prospective relief. 518 F. Supp.2d at 376. Likewise, the Court is not persuaded by *Fair Housing Counsel of Oregon* as it provided no explanation as to why the minimal liability of one defendant was satisfied by the settlement payments of other defendants. 2012 WL 8017842, *15.

(citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 558 (internal quotation marks and citations omitted).

Rule 8 does not demand "detailed factual allegations[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). However, a mere "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Id*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). Although factual allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet does not apply to legal conclusions. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id*. at 679. If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id*. (quoting, in part, Fed. R. Civ. P. 8(a)(2)). Additionally, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*.

**C.**
**RESPA**

Under these principles the Court considers Citizens' first argument that Plaintiff's RESPA claim in Count II fails as a matter of law. In Count II, Plaintiff asserts that Citizens failed to comply with § 2605(g) of RESPA. This section provides:

> If the terms of any federally related mortgage loan require the borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property, the servicer shall make payments from the escrow account for such taxes, insurance premiums, and other charges in a timely manner as such payments become due. *Any balance in any such account that is within the servicer's control at the time the loan is paid off shall be promptly returned to the borrower within 20 business days* or credited to a similar account for a new mortgage loan to the borrower with the same lender.

12 U.S.C. § 2605(g) (italics added). Plaintiff argues that Citizens' full PMI payment of $50.51 after the loan was paid violates the statute's mandatory requirement that a servicer "shall" return to the borrower the balance at the time the loan is paid off. *See Harrell v. Freedom Mortg. Corp.*, 976 F.3d 434, 440 (4th Cir. 2020) (per curiam) (stating "[t]he obligation for the servicer to make payment is triggered by the 'terms of . . . [the] loan' and the date at which a payment 'becomes due,' not the date that a payment is received for escrow" (citations omitted)).


In its motion, Citizens states the PMI premiums were "No Credit" and "Non-Refundable" monthly premiums that it was required under § 2605(g) to submit to Genworth. Citizens asserts it paid the premium to Genworth as required by RESPA and timely paid Plaintiff the balance in the escrow account. Citizens argues Plaintiff has not shown any law requiring it to prorate the payment. Moreover, Citizens maintains that Plaintiff's claim that her escrow account balance was not properly paid to her falls outside the scope of § 2605(g) and, thus, fails as a matter

of law. *See Citizens' Mem. of Law in Supp. of Mot. to Dismiss*, at 8 (citing *Stefanowicz v. SunTrust Mortg.*, 765 Fed. Appx. 766, 769 (3d Cir. 2019), for the proposition that a servicer's failure to properly credit an escrow account when the plaintiff paid expenses herself, fell outside the scope of § 2605(g)). Furthermore, Citizens argues Plaintiff has not alleged the existence of any contract between the two that would require Citizens to credit her account with a prorated share of the PMI premium.

In her Response, Plaintiff challenges the documents Citizens attached to its motion to support its position that the PMI payments are "No Credit" and "Non-Refundable." Specifically, Citizens attached to its motion a "Mortgage Insurance Request" (Exhibit C) and a "Commitment/Certificate of Insurance" (Exhibit D). Plaintiff asks the Court to not consider these documents because they do not meet the standard for admission at the motion to dismiss stage.[5] Plaintiff states that she does not rely upon either of these documents in her First Amended Class Action Complaint and that, based upon a previous inadvertent error with respect to a different exhibit Citizens provided her, she is not confident in the reliability of these exhibits. Thus, Plaintiff requests the opportunity to verify their accuracy and authenticity through discovery.

In its Reply, Citizens argues that the PMI is integral to the First Amended Class Action Complaint, and Exhibits C and D provide the premium amount and other information about her PMI, including the fact she is not entitled to a credit or refund. Although these documents may

---

[5]Plaintiff also challenges this Court's consideration of Citizens' Exhibit A (the "Uniform Underwriting and Transmittal Summary") and Exhibit G (the "Customer Account Activity Statement"). The Court finds it unnecessary to reference either of these exhibits in resolving the pending motions.

provide such information, the Court finds that their potential relevancy is not the equivalent of these documents being relied upon as an integral part of the First Amended Class Action Complaint. *See Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (stating the general rule is that "extrinsic evidence should not be considered at the 12(b)(6) stage," but a court may consider a document attached to a motion to dismiss if "it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity" (internal quotation marks and citations omitted)). As Plaintiff is requesting she be given the opportunity to verify these documents through discovery and Citizens has not convinced the Court they are integral, the Court finds that reliance upon them at this point in the proceedings would be inappropriate and premature. Thus, the Court will not consider Exhibits C and D.[6]

Setting aside the "No Credit" and "Non-Refundable" argument for the time being, the Court still must address whether Plaintiff can pursue a claim under § 2605(g). Although this section is silent as to credit and refunds, Plaintiff contends the mandatory language of the statute required Citizens to return to her the balance "at the time the loan [was] paid off." 12 U.S.C. § 2605(g). As Citizens did not comply with this mandate, Plaintiff asserts she is entitled to damages. Plaintiff emphasizes she has not alleged under RESPA that she is entitled to a "refund" of a pro rata share of the PMI. While her actual damages are equal to the pro rata share, this fact does not change the nature of her claim. Rather, she maintains her claim against Citizens is that it violated the statute by returning to her less than the amount in her escrow account at the time her

---

[6]As the Court will not consider these documents, the Court finds it unnecessary at this point to address Plaintiff's argument that the terms "No Credit" and "Non-Refundable" are not defined in the documents and that she was not a party to any such agreement.

loan was paid in full. Given this allegation, Plaintiff asserts her claim is distinguishable from *Stefanowicz* cited by Citizens because in that case the *pro se* plaintiff never alleged a failure to "timely pay any expenses from her escrow account and/or [a failure] to timely refund any remaining balance after she paid off her loan." 765 Fed. Appx. at 769. The Court agrees that *Stefanowicz* is distinguishable from this case, and the Court will not apply its holding here where Plaintiff has expressly alleged a violation of the statute.

Plaintiff further argues that, although Citizens asserts it was required under RESPA to make a timely payment, it made the payment only seven days after the June 12 payment, which was much earlier than when payments were typically made. Thus, Plaintiff insists it is implausible that Citizens was operating under some sort of due date requiring payment on June 19. As RESPA requires payment when the "payments become due" and not when the payment is made into the escrow account, Plaintiff suggests Citizens was not obliged to pay the PMI when it did. Moreover, as the PMI payment appears to have been due in July, Plaintiff argues Citizens was not obligated under RESPA to make the PMI payment at all because it was no longer the servicer of the loan at that time. Instead, any obligation Citizens had was a contractual obligation it had solely with Genworth.

Citizens replies that its obligation to pay the PMI does not exist in a vacuum. Plaintiff is required to make payments to the escrow account covering her PMI premiums and, in turn, it is required to remit those payments to Genworth. Citizens maintains Plaintiff's speculation as to due dates and her contention that it was not required to make the payment under RESPA is factually wrong. Citizens argues it simply processed the last remaining PMI premium that was due

-12-

for June. Moreover, Citizens asserts that, contrary to Plaintiff's position, RESPA is not a strict liability statute. Instead, it only requires a servicer under § 2605(g) to act reasonably. *Webb v. Chase Manhattan Mortg. Corp.*, 2008 WL 2230696, *16 (S.D. Ohio May 28, 2008) (recognizing courts have applied a reasonableness standard to some RESPA provisions). As it acted reasonably in remitting the payment to Genworth, Citizens states it cannot be held liable.

In considering the parties' arguments, the Court must keep in mind that the current motion is one to dismiss and the facts must be viewed in the light most favorable to Plaintiff. Here, Plaintiff alleges that Citizens failed to pay her the amount contained in the escrow account she was owed when she paid off her loan. There are questions regarding the due date for the PMI payment, whether the payment should have been prorated and, if Citizens' argument is to be accepted, whether it acted reasonably in remitting the entire PMI payment to Genworth. Although there may be nuances of the parties' arguments this Court could parse through, in the end, it is clear that a ruling on Citizens' motion to dismiss the RESPA claim prior to discovery would be premature. Therefore, the Court **DENIES** Citizens' motion to dismiss Plaintiff's RESPA claim.

### D.
### Breach of Contract

Citizens next argues that Plaintiff's breach of contract claim in Count III should be dismissed as a matter of law because Citizens was not a party to the Deed of Trust between Plaintiff, as borrower, and United Bank, Inc., as lender. Citizens states that neither itself nor any of its predecessor mortgage servicers were a party to the Deed of Trust and it is not in privity of contract with Plaintiff. Thus, Plaintiff cannot maintain a cause of action against it for breach of contract. Although Plaintiff argues Citizens should be bound by the Deed of Trust or be held liable as an agent, cases in this District have rejected both those arguments.

For instance, in *Hanson v. Amerihome Mortg. Co.*, 2:17-cv-03691, 2017 WL 6626328 (S.D. W. Va. Dec. 28, 2017) (Johnston, J.), the court explained that, under West Virginia law, a breach of contract claim must demonstrate: "(1) a contract between the parties; (2) the breach, or failure to comply with the contract; and (3) damages flowing from the breach." 2017 WL 6626328, at *6 (citation omitted). Additionally, the court stated "that, generally, one who is not party to a contract with another cannot have an action for breach of contract maintained against him." *Id*. (citation omitted). Thus, where a loan servicer is not named in the Deed of Trust and there are no facts showing contractual privity between the servicer and the plaintiff, the servicer cannot be liable for a breach of contract. *Id*. Nor can the servicer be held liable under an agency theory because "under West Virginia law, [even] an agent . . . contracting for and on behalf of a principal known or disclosed to the person with whom the contract is made, is not personally bound by it, nor liable for breach, thereof, unless the credit extended to him or he has expressly bound himself by the contract in some form." *Id*. (internal quotation marks and citations omitted).

Similarly, this Court reached a similar result in *Petty v. Countrywide Home Loans, Inc*., 3:12-cv-06677, 2013 WL 1837932 (S.D.W. Va. May 1, 2013). In *Petty*, the loan servicer maintained there was no contract between it and the plaintiff borrowers. Like here, the plaintiffs nevertheless argued the loan servicer should be bound by the Deed of Trust despite not being an original party to the contract or current holder of the loan. This Court disagreed and held the borrowers failed to allege a plausible breach of contract claim. *Id*. at *10 (collecting cases holding a breach of contract claim cannot be maintained against a loan servicer that was not a party to the mortgage agreement).

-14-

In Count III, Plaintiff alleges Citizens breached the Deed of Trust by not paying her the balance in her escrow account when she paid off the loan. However, as Citizens was not a party to the agreement, the Court finds under *Hanson* and *Petty* that Plaintiff's breach of contract claim fails as a matter of law. Therefore, the Court **GRANTS** Citizens' motion with respect to Plaintiff's contract claim.

## E.
## WVCCPA Claims

Citizens argues Plaintiff's claims under the WVCCPA also fail as a matter of law. In Count V, Plaintiff alleges Citizens' role of collecting debt payments and escrow funds qualifies it as a "debt collector" as that term is defined in West Virginia Code § 46A-2-122(d). As such, Plaintiff asserts Citizens' representation to her that Genworth had a valid claim to the entire $50.51 PMI payment "violated the WVCCPA's prohibition against debt collectors using 'any fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims or to obtain information concerning consumers,' W. Va. Code § 46A-2-127, including without limitation making '[a]ny false representation or implication of the character, extent or amount of a claim against a consumer[.]'" *First Am. Class Action Compl.* at ¶101 (quoting W. Va. Code 46A-2-127(d), in part). Additionally, Plaintiff alleges that Citizens' acts violated the provision that "'[n]o debt collector may use unfair or unconscionable means to collect or attempt to collect any claim.'" *Id.* at ¶102 (quoting W. Va. Code § 46A-2-128, in part). In Count VI, Plaintiff alleges that Citizens' failure to timely refund the entire amount of the escrow account she was violated the "'[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce'" provision of the WVCCPA. *Id.* at ¶106 (quoting W. Va. Code § 46A-6-104). Upon review of the parties' arguments, the Court finds it must analyze Counts V and VI separately.

As to Count V, the WVCCPA provides consumers with a private cause of action against creditors or debt collectors who violate its provisions. *See* W. Va. Code § 46A–5–101(1).[7] A "debt collector" is defined under the Act as "any person or organization engaging directly or indirectly in debt collection." W. Va. Code § 46A-2-122(d), in part. A "debt collection" in turn is defined as "any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due by a consumer." W. Va. Code § 46A-2-122(c). Additionally, the Act provides that a "[c]laim means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or service which is the subject of the transaction is primarily for personal, family or household purposes, whether or not such obligation has been reduced to judgment." W. Va. Code § 46A-2-122(b). In Plaintiff's cursory response to Citizens' argument it is not a "debt collector," she merely states that Citizens regularly communicates with consumers to obtain debt payments and its contention it is not a debt collector runs afoul of the broad protections the WVCCPA grants consumers against wrongdoers.

Concededly, there is scant caselaw on whether a loan servicer qualifies as a debt collector under the WVCCPA. In *Rice v. Green Tree Servicing, Inc.*, 3:14-cv-93, 2015 WL 5443708, the district court considered an analogous situation at the summary judgment stage. In *Rice*, the plaintiff alleged that the loan servicer violated the WVCCPA by sending the plaintiff a monthly billing statement that included a PMI premium. 2015 WL 5443708, at *11. The loan

---

[7]Subsection (1) provides, in part: "If a creditor or debt collector has violated the provisions of this chapter [under certain enumerated circumstances] . . . the consumer has a cause of action to recover: (a) Actual damages; and (b) a right in an action to recover from the person violating this chapter a penalty of $1,000 per violation[.]" W. Va. Code § 46A–5–101(1), in part.

servicer argued it was required to send monthly statements, even if it made a good faith mistake including the cost of PMI beyond the PMI automatic termination date. In deciding whether the loan servicer qualified as a debt collector, the court looked to the specific facts presented on summary judgment and found the plaintiff always timely made payments and his account was never referred to collections. *Id.* at *12. The loan servicer also never made collection calls or sent collection letters to the plaintiff. *Id.* Although recognizing the WVCCPA should be applied broadly, the district court found the defendant's conduct did "not rise to the level of 'unscrupulous collection practices and, arguably, did not constitute collection practices at all." *Id.* Likewise, the court concluded the monthly billing statement did not constitute a "'false representation'" under § 46A-2-227(d) and the loan servicers' mistaken interpretation of federal law did not rise to the level of fraudulent, deceptive, or misleading conduct. *Id.*

In turning to this case, Plaintiff alleges that Citizens acted as a "debt collector" by collecting mortgage payments and escrow funds. *First Am. Class Act. Compl* at ¶100. There are no allegations that Citizens wrote letters, made phone calls, or made any other demands to Plaintiff to collect these funds. Indeed, Plaintiff's allegations are that, on the day Citizens took over servicing the loan, she made her regular monthly payment for May and her payment for June. Thereafter, she paid the loan in full before her July payment became due. After receiving the payments, Citizens, as the servicer of the loan, made three $50.51 payments from the escrow account to Genworth for April, May, and June. Plaintiff asserts she spoke with a representative of Citizens in November 2019, who told her that "the 'Genworth screen' . . . indicated that no PMI premium refund was due." *Id.* at ¶38, in part. Plaintiff contends she was informed by Citizens again in April and May of 2020 that she was not due a refund. *Id.* at ¶40. Plaintiff alleges that these

-17-

statements violated West Virginia Code § 46A-2-127 and 128 because they misrepresented that the final PMI premium was valid.

A violation of West Virginia Code § 46A-2-127 occurs when a false representation by a "debt collector" is made "to collect or attempt to collect claims or to obtain information concerning consumers." W. Va. Code § 46A-2-127, in part. However, in this case the alleged fraudulent statements were made *after* Citizens received Plaintiff's payoff and had disbursed the funds to Genworth. At that point in time, the loan was paid in full and there was no collection or collection attempts. Thus, even if the Court assumes for purposes of this motion that Plaintiff has sufficiently alleged Citizens is a "debt collector" and it made fraudulent statements, those statements did not violate West Virginia Code § 46A-2-127 because they were not made "to collect or attempt to collect" Plaintiff's debt. Therefore, the Court finds Plaintiff has not properly alleged a claim under West Virginia Code § 46A-2-127.

Plaintiff also alleges in Count V that Citizens' actions violated West Virginia Code § 46A-2-128's prohibition of using "unfair or unconscionable means to collect or attempt to collect any claim." W. Va. Code § 46A-2-128, in part. As with § 46A-2-127, however, any alleged "unfair or unconscionable means" by Plaintiff did not occur while collecting or attempting to collect Plaintiff's debt. The debt already was paid. Thus, Plaintiff cannot proceed under this section, and the Court **GRANTS** Citizens' motion to dismiss Count V.

With respect to Count VI, Plaintiff asserts Citizens violated the general consumer protection provisions by committing unfair and deceptive acts or practices as contemplated by

West Virginia Code § 46A-6-104 by failing "to timely refund escrow account balances and associated misrepresentations." *First Am. Class Action Compl.* at ¶106. This section prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" W. Va. Code § 46A-6-104. "Trade or commerce" is defined, in part, as the "sale or distribution of any goods or services and shall include any trade or commerce, directly or indirectly, affecting the people of this state." W. Va. Code § 46A-6-102(6), in part. The Act further provides that "[u]nfair methods of competition and unfair or deceptive acts or practices' means and includes, but is not limited to,"

> (L) Engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding; [and]

> (M) The act, use or employment by any person of any deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any goods or services, whether or not any person has in fact been misled, deceived or damaged thereby[.]

W. Va. Code Ann. § 46A-6-102(7)(L) and (M).

In her First Amended Class Action Complaint, Plaintiff specifically references subsections (L) and (M). Subsection (L) appears to be a catch-all provision for confusing and misleading conduct by a defendant. Here, Plaintiff has alleged that Citizens misrepresented the balance she was entitled to receive from her escrow account and, after Genworth was paid the entire $50.51, Citizens misrepresented that she was not entitled to recover the "unearned" portion of the June PMI premium. Although Citizens denies it made any misrepresentations, the Court finds that issue is better addressed after discovery and that Plaintiff has sufficiently alleged a cause of action under subsection (L) to survive a motion to dismiss.

On the other hand, subsection (M) expressly relates to "the sale or advertisement of goods or services." W. Va. Code § 46A-6-102(7)(M). The Court finds Plaintiff's allegations that she did not receive a full refund and that Citizens made misrepresentations related to the PMI payment are not within the scope of the express terms of this subsection as they are irrelevant to sales and advertising. Accordingly, although Plaintiff may proceed under subsection (L), she may not proceed under subsection (M).

Citizens further argues, however, that PMI is not covered by the WVCCPA. In support, Citizens points to West Virginia Code § 46A-3-109. This section provides that "a creditor may contract for, and receive the following additional charges in connection with . . . a consumer loan: . . . (2) Charges for insurance as described in subsection (b) . . . ." W. Va. Code § 46A-3-109(a)(2), in part. Under subsection (b) a creditor may obtain insurance providing coverage for the "loss of or damage to property or against liability" and coverage for "life, accident, health or loss of income." § 46A-3-109(b)(4), (5). As section 109 does not mention PMI, Citizens argues Plaintiff has no cause of action under the WVCCPA. Although Plaintiff completely failed to respond to this argument, the Court nevertheless rejects it.

Section 109 provides that a creditor "may" include charges for certain types of insurance and it prescribes obligations and restrictions on the creditor if those types of insurance coverage are included. However, section 109 does not provide it is an exclusive list of the types of insurance related to a consumer loan, and Plaintiff has not alleged that Citizens' has not violated section 109 but, rather, its broader provisions. Therefore, the Court find the mere fact PMI is not

-20-

mentioned in section 109 does not preclude it from the consumer protections afforded by other provisions of the WVCCPA.

### F.
### Jurisdiction Over Non-Residents

Citizens' final argument is that the Court should dismiss the nationwide putative class under Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of both general and specific personal jurisdiction over non-West Virginia residents. In support, Citizens cites *Bristol-Myers Squibb Co. v. Superior Court of California,* 137 S. Ct. 1773 (2017). However, *Bristol-Myers* involved a mass tort action, and this Court expressly declined in *Ross v. Huron Law Group West Virginia, PLLC*, 3:18-cv-0036, 2019 WL 637717 (S.D. W. Va. Feb. 14, 2019), to apply the *Bristol-Myers'* analysis to putative class actions, as exists here. The Court finds no reason to depart from *Ross* in this case and, therefore, **DENIES** Citizens' motion to dismiss the putative class members who are not West Virginia residents.

### III.
### CONCLUSION

Accordingly, for the foregoing reasons, the Court **DENIES** Defendant Citizens Bank, N.A.'s ("Citizens") Motion to Dismiss Plaintiff Dr. Habiba Chirchir's First Amended Class Action Complaint as to Count II under RESPA, **GRANTS** the motion to dismiss Count III for Breach of Contract, **GRANTS** the motion to dismiss Count V for fraudulent, deceptive, or misleading representations under the WVCCPA, and **GRANTS, in part,** and **DENIES, in part,** Citizens' motion to dismiss Count VI for unfair or deceptive acts or practices under the WVCCPA. ECF No. 19. The Court also **DENIES** Citizens' its Supplemental Motion to Dismiss Plaintiff's First Amended Complaint under Fed .R. Civ. P. 12(b)(1). ECF No. 48.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:        February 9, 2022

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE